## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

MATTHEW ESPINOSA,              )

                                 )

              Plaintiff,     )

                                 )

        v.                  )

                                 )     Case No. _____

UNITED STATES DEPARTMENT OF  )

DEFENSE,                  )

                                 )

              Defendant.    )

                                 )

_____)

## COMPLAINT

Plaintiff Matthew A. Espinosa ("Plaintiff" or "Mr. Espinosa"), by and through his undersigned attorneys, brings this action against Defendant, the United States Department of Defense, for relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA")[1] and judicial review of a decision by the Board for Correction of Naval Records ("BCNR" or "Board") rejecting Mr. Espinosa's request that his records be corrected to reflect that he was medically retired. In support of his claims, Mr. Espinosa alleges as follows:

## INTRODUCTION

1.     This case arises from the failure of the Navy to honor its duty to a veteran who honorably served his country until he developed duty-incurred major depressive disorder ("MDD") and post-traumatic stress disorder ("PTSD") that left him unfit to serve. Despite these significant, duty-related events that rendered him unfit, Mr. Espinosa was denied a medical

_____

[1] A consolidated table of abbreviations used in this Complaint is attached at Appendix 1.

retirement in service. Mr. Espinosa sought relief from the BCNR, but was denied relief in a decision that was arbitrary, capricious, contrary to law, and unsupported by substantial evidence.

2.    Mr. Espinosa served honorably in the U.S. Navy as a Computer Network Defense Analyst from July 26, 2011, and received high praise from his superiors for performing beyond his rank. In late 2011, he survived a sexual assault that triggered chronic panic attacks and insomnia. His symptoms were compounded in 2014 when he discovered his spouse's infidelity, leading to a psychiatric crisis and suicide attempts. He was hospitalized multiple times in 2014 and 2015, diagnosed with PTSD and severe MDD, and treated extensively by both military and civilian mental health providers.

3.    Despite these clear indicators of service-connected psychiatric disability, Mr. Espinosa was denied medical retirement while still in service. Though the Navy's Medical Evaluation Board ("MEB") concluded that his PTSD required referral to a Physical Evaluation Board ("PEB")—which was separately confirmed when the Department of Veterans Affairs ("VA") contemporaneously conducted an exam that supported a minimum rating of 70 percent for his PTSD and MDD—the Navy never allowed Mr. Espinosa to complete the Disability Evaluation System ("DES") process. Instead, his command initiated administrative separation proceedings and ordered the PEB Liaison Officer to cancel Mr. Espinosa's DES "immediately." Command relied upon Mr. Espinosa's unauthorized trip to El Paso, Texas as misconduct warranting separation, although he took this trip during a psychiatric emergency in order to confront his spouse, during which he attempted suicide.

4.    Mr. Espinosa was separated from the Navy in September 2015 with just ten days' notice, thereby terminating the DES process. As a result, he was never afforded a PEB determination on fitness or a disability rating from the VA at the time of discharge.

5.      After years of post-service hardship, in 2017 the VA assigned Mr. Espinosa a
100% disability rating for PTSD. He subsequently petitioned the BCNR for medical retirement.
In partial relief, the Board changed his narrative reason for discharge from "misconduct" to
"Secretarial Authority" as an act of clemency, but it denied medical retirement, asserting—
without support—that there was insufficient evidence that Mr. Espinosa was unfit at the time of
discharge. The Board's conclusion ignored well-documented clinical findings that ***explicitly***
identified PTSD and MDD as the cause of his symptoms and functional impairments, and,
instead, BCNR summarily decided that his misconduct was likely due to a personality disorder, a
non-compensable condition.

6.      The BCNR's decision must be set aside. It was arbitrary and capricious because it
cherry-picked select facts while ignoring voluminous medical documentation—including
repeated diagnoses by treating military psychiatrists—that established Mr. Espinosa's unfitness
due to PTSD and MDD at time of discharge. The Board's decision also was contrary to law
because it refused to apply the binding fitness standard: it identified none of Mr. Espinosa's
Cryptologic Technician duties as part of its determination, made no assessment of how his PTSD
and MDD impaired those duties, and declined to give any weight to his subsequent 100 percent
VA disability rating. The decision similarly was unsupported by substantial evidence because it
overemphasizes a single, unexplained personality disorder diagnosis from one social worker—
one that is directly contradicted by the preponderance of clinical findings.

7.      Mr. Espinosa has already suffered greatly due to the Navy's failure to afford him
the disability retirement he earned. This Court should reverse the BCNR's denial and remand
with instructions to award Mr. Espinosa the medical retirement to which he is lawfully entitled.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 2201, and

2202, as this case raises federal questions under the APA, 5 U.S.C. § 701 *et seq.*

9.      The BCNR's decision constitutes final agency action for which there is no other

adequate remedy. *See* 5 U.S.C. § 704.

10.     Mr. Espinosa seeks solely equitable relief in this action, namely a finding that the

Board's decision is arbitrary, capricious, against the substantial evidence, and contrary to law,

and a remand to the Board to reconsider Mr. Espinosa's case under the proper standard.

11.     Venue in this Court is proper under 28 U.S.C. § 1391 because the BCNR, which

is organized under the Department of Defense, resides in Washington, D.C. and the acts or

omissions giving rise to this lawsuit took place in the judicial district of the District of Columbia.

## PARTIES

12.     Plaintiff Matthew Espinosa is a citizen of the United States and a veteran of the

United States Navy. He currently resides at 3842 Bogie Way, Converse, TX 78109.

13.     Defendant the United States Department of Defense, headquartered at 1400

Defense Pentagon, Washington, D.C. 20301-1440, is a department of the Executive Branch of

the United States Government. The Department of Defense is an agency of the United States

under the APA (5 U.S.C. § 701(b)(1)) and falls within the scope of 28 U.S.C. § 1391.

14.     The Department of the Navy is a branch of the Department of Defense. The head

of the Department of the Navy is the Secretary of the Navy, and BCNR is an organization within

the office of the Secretary of the Navy. *See* 32 C.F.R. §§ 723.1 *et seq.*; Secretary of the Navy

Instruction ("SECNAVINST") 5420.193.

15.     In accordance with 28 U.S.C. § 2401(a), this action is brought within six years of

the BCNR's decision denying relief.

## ALLEGATIONS

I.    **Applicable Law and Standards**

16.    The Board, on behalf of the Secretary, may change a Sailor's record when necessary to correct an error and to remove an injustice, including when a Sailor is discharged without proper disability processing. 10 U.S.C. § 1552.

17.    Generally, when the Navy determines that a Sailor has a disability that makes him or her unfit for continued military service, the Sailor should be referred into the DES process in order to be separated from service with either (1) medical separation, or (2) medical retirement. Disabilities warranting DES processing include panic disorders, such as PTSD, incurred while in service.

18.    A Sailor is medically retired when: (a) the MEB determines that the Sailor failed to meet retention standards and refers the sailor to a PEB, (b) the PEB then finds the Sailor unfit to perform the duties of his or her office, grade rank, or rating; and (c) the Sailor has at least a 30 percent disability rating pursuant to the Veterans Affairs Schedule for Rating Disabilities ("VASRD"). SECNAVINST 1850.4E, Enclosure 8, para. 8001(a-g) (2002); Department of Defense Instruction ("DoDI") 1332.18, Appendix 2 to Enclosure 3 at para. 2(a) (2014); 10 U.S.C. § 1216(a). A medical retiree is entitled to military medical retirement and corresponding benefits. If the service member is assigned a combined disability rating of less than 30 percent, the service member is instead administratively separated.

19.    A PEB will find a service member unfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank or rating. DoDI 1332.18, Appendix 2 to Enclosure 3 at para. 2(a) (2014). Factors for evaluating reasonable performance include whether a medical condition prevents a

service member from performing common military tasks, passing a physical fitness test, or deploying. *Id*; *see also* SECNAVINST 1850.4E, para. 3302(b) (2002).

20.    A PEB may also find a service member unfit if the service member's condition represents a decided medical risk to the member—such as a suicide risk—or to the welfare of other military members, or if it imposes unreasonable requirements on the military to maintain or protect the member. DoDI 1332.18, App. 2 to Encl. 3 at para. 2(b) (2014); SECNAVINST 1850.4E, para. 3302(b) (2002).

21.    The VASRD schedule sets out different disability levels. A 30 percent VASRD disability rating for a mental health condition corresponds to: "Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events)." 38 C.F.R. § 4.130.

22.    A 70 percent VASRD disability rating for a mental health condition corresponds to: "Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships." *Id.*

23.     When reviewing an application for correction of military records to reflect medical retirement, the BCNR is required to follow the exclusive standards governing military fitness determinations set out in 10 U.S.C. § 1201 and DoDI 1332.18 (2014). These authorities require a finding of fitness to be based on a service member's ability to reasonably perform the duties of their office, grade, rank, or rate. *See Nyan v. United States*, 154 Fed. Cl. 463, 466 (2021). Specifically, these standards require the adjudicator to: (a) identify the duties a service member of that rank and specialty is expected to perform; and (b) assess whether the member's condition impairs their ability to reasonably perform those duties.

## II.    Mr. Espinosa Developed Unfitting PTSD and MDD During His Time in the Navy

### A.    Mr. Espinosa Exhibited No PTSD or MDD Symptoms and Was Fit For Service When He Entered the Navy

24.     On October 19, 2010, Mr. Espinosa took a pre-service medical examination which reported no symptoms or diagnoses of mental health conditions, and that he was in "good health." In July 2011, Mr. Espinosa enlisted in the Navy.

25.     Mr. Espinosa joined the Navy's Cyber Command and worked as a Computer Network Defense Analyst. Mr. Espinosa received Top Secret Clearance and provided in-depth analysis and monitoring of adversary intrusions in support of worldwide Computer Network Defense.

26.     Top Secret Clearance was required for Mr. Espinosa's work in the Navy's Cyber Command as a Computer Network Defense Analyst.

27.     During Mr. Espinosa's service, he received the Navy Good Conduct Medal, National Defense Service Medal, and Global War on Terror Service Medal, qualified as a Marksman with the 9mm Pistol, and was designated an Enlisted Information Dominance Warfare Specialist.

**B.     Mr. Espinosa Develops Unfitting MDD and PTSD**

28.     In December 2011, Mr. Espinosa was sexually assaulted. This began Mr. Espinosa's spiral downward.

29.     During authorized leave in late 2011, Mr. Espinosa informed his family of his sexual orientation. His family reacted poorly, and due to the resulting disagreements Mr. Espinosa stayed with a friend rather than at the family home. While staying at his friend's house, Mr. Espinosa was sexually assaulted after drinking an apparently spiked alcoholic beverage. Mr. Espinosa considered reporting the event to the Navy, but he was under the legal drinking age at the time and was concerned about the repercussions of admitting under-age drinking to his Command. Conflicted, he chose not to report the assault and did not acknowledge this sexual assault in the immediate years afterwards.

30.     By summer 2012, Mr. Espinosa started to experience significant mental health symptoms. Mr. Espinosa described the symptoms, and said that he felt like they "came out of nowhere." He began having insomnia and panic attacks, averaging at about two panic attacks a month.

31.     Despite his escalating symptoms, Mr. Espinosa pushed himself to maintain his high performance and added responsibilities. Mr. Espinosa's February 28, 2013 performance evaluation reported that he met the standards in every category of his work, demonstrating "exceptional drive in every task and constant initiative to take on responsibility traditionally reserved for higher ranking Sailors." In his June 15, 2013 performance evaluation, Mr. Espinosa was reported to be "above standards" in five categories, "greatly exceeds standards" in another category, and was described as a "true asset to the Navy" and a "dedicated professional and leader" who "set[] the standard within his peer group."

32.     During this time, Mr. Espinosa also voluntarily trained other enlisted personnel in Digital Network Exploitation Analysis, served as a fitness instructor and lifeguard, and began pursuing a Bachelor's degree in computer science from American Military University. He regularly was working 16-hour days, or longer.

33.     In July 2014, Mr. Espinosa learned his spouse was being unfaithful. Mr. Espinosa began considering divorce, his panic attacks and insomnia worsened, and he started developing suicidal ideation as well as internal conflict about whether to carry these plans out.

34.     In August 2014, Mr. Espinosa purchased a one-way ticket to El Paso, Texas—more than 350 miles from his duty station—without obtaining the required travel authorization. The object of the trip was to speak with his spouse, in light of the infidelity revelations. Mr. Espinosa's spouse met him at the airport, and while his spouse was driving Mr. Espinosa attempted to jump out of the car as it was traveling approximately 65 miles per hour on the highway. After his spouse stopped the car, Mr. Espinosa tried to walk into traffic. The following day, Mr. Espinosa wrote a suicide note and attempted to hang himself in a closet with a belt, but the belt broke during the attempt. Mr. Espinosa was brought to William Beaumont Emergency Department, and then admitted to Peak Psychiatric Hospital for 11 days of psychiatric care.

35.     Following his discharge from the hospital, Mr. Espinosa's mental health symptoms continued. On September 3, 2014, Mr. Espinosa presented to the Mental Health Clinic at Joint Base San Antonio–Lackland, accompanied by his supervisor and senior chief petty officer/first sergeant. Psychiatrist Dr. Higgins examined Mr. Espinosa and diagnosed him with MDD and Unspecified Anxiety Disorder. Dr. Higgins referred Mr. Espinosa to a Partial Hospitalization Program ("PHP") at Laurel Ridge Treatment Center, where medical professionals maintained those diagnoses. Dr. Higgins also recommended Mr. Espinosa's

security clearance be suspended and noted that an MEB referral may be indicated. To maintain

accountability and support, Dr. Higgins instructed Mr. Espinosa to notify his unit upon arrival at

Laurel Ridge and, after each therapy session, to check in with his chain of command every other

day, and to coordinate any planned travel to El Paso with both his command and his mental

health providers.

36.    On October 19, 2014, after his discharge from the PHP program, Mr. Espinosa

was admitted for inpatient psychiatric care at Brooke Army Medical Center and was seen by its

Consult Liaison Service. At discharge on October 22, 2014, Dr. Jessica Beachkofsky diagnosed

Mr. Espinosa with MDD, single episode, severe without psychotic features, and PTSD. She

observed that his symptoms included a "diminished ability to think or concentrate" and resulted

in "clinically significant distress and impairment in social and occupational areas of

functioning." She further described his behavior as "reckless and self-destructive," and

concluded that his psychiatric conditions were "***not attributable to*** the physiological effects of a

substance or ***another medical condition***" (emphasis added) like personality disorder. Dr.

Beachkofsky recommended continued outpatient care, restrictions from safety-sensitive duties,

and transfer into the Laurel Ridge PHP.

37.    That same day, Dr. Beachkofsky also completed an Abbreviated Medical

Evaluation Board Report.  She stated that Mr. Espinosa's mental health condition was "so severe

[his] ability to function in the military environment is significantly impaired," and that he was

"unsuitable for continued military service at this time. Reclassification to another rating highly

unlikely to result in positive outcomes."

38.    On November 17, 2014, Mr. Espinosa was re-admitted to Laurel Ridge's PHP,

and remained enrolled through early January 2015. While participating in the program, he

continued to undergo routine wellness checks at the 59th Medical Wing's Wilford Hall Ambulatory Surgical Center. During an evaluation on November 18, 2014, Licensed Clinical Social Worker Courtney A. Wilson diagnosed Mr. Espinosa with Borderline Personality Disorder, in addition to his existing diagnosis of MDD, single episode, severe without psychotic features. Ms. Wilson's documentation did not cite the Diagnostic and Statistical Manual of Mental Disorders or provide a clinical rationale for this new diagnosis. She noted that his prognosis was "poor due to borderline personality disorder," and formally documented the suspension of his security clearance.

39.     By the week of December 8, 2014, Mr. Espinosa's medical providers listed a depression score of 7-8 (out of 10) and an anxiety score of 6-7 (out of 10), noted that his sleep was limited to 3-5 hours per night, and recorded that he was experiencing intermittent rage, nightmares, and impulsivity. Mr. Espinosa had been scheduled for a December 30, 2014 discharge from PHP, but it was extended to January 7, 2015.

40.     On January 14, 2015, just days following his PHP discharge, Mr. Espinosa was again struggling emotionally. In an attempt to cope, he went to a karaoke bar and uncharacteristically drank heavily: "I drank about 7-8 scotch shots. I was very drunk."  While intoxicated, he was ejected by the bouncer; he became "aggressive" after being handled physically by the bouncer, which he said "triggered [his] symptoms of abuse."

41.     Unable to find his phone or keys after being ejected, Espinosa went to stay at a hotel. There, he reported having suicidal ideation, stating he considered "jump[ing] from the window/door of the room but it was sealed shut." The next morning, still hungover and without his keys or uniform, in civilian clothes he took a cab to his post. His command noted that he smelled of alcohol and was visibly distressed.

42.    Mr. Espinosa experienced a panic attack upon arrival and was then transported via ambulance to the hospital in restraints, which further evoked memories of abuse: "They forced [me] on the gurney and strapped [me] in which reminded [me] of the 'torture [my abuser] used to do to me.'" This triggered another or escalated his panic attack.

43.    Ultimately, Mr. Espinosa was voluntarily admitted to inpatient psychiatric care and initially diagnosed with MDD, Borderline Personality Disorder, Alcohol Use Disorder, and PTSD. His inpatient stay focused on medication adjustment, coping skills development, trauma-informed care, and preparation for discharge and outpatient follow-up. Mr. Espinosa remained in inpatient treatment until March 2015, when he was discharged with a primary diagnosis of MDD, severe, without psychotic features.

44.    On April 1, 2015, Mr. Espinosa was hospitalized for another suicide attempt, this time by aspirin overdose, first at Methodist Hospital in San Antonio and then at Brooke Army Medical Center – San Antonio Military Medical Center – SAM HOUSTON ("SAMMC"). While hospitalized at SAMMC, Mr. Espinosa tried to take his life again. From April through June, Mr. Espinosa remained in inpatient care and PHP programs at various hospitals.

45.    Although Mr. Espinosa's symptoms remained consistent, his primary diagnosis was frequently listed as Borderline Personality Disorder. Notably, however, Mr. Espinosa's medication targeted compensable psychiatric conditions. He was prescribed antidepressants (Mirtazapine and Venlafaxine XR), antipsychotics (Risperidone), anxiolytics (Hydroxyzine), and sleep aids (Cyproheptadine)—a combination of medications typically used to treat mood and anxiety disorders.

C.    **Mr. Espinosa Faces Dual Processing: Administrative Separation and Disability Evaluation System Processing for MDD and PTSD**

46.     Amidst Mr. Espinosa's struggles, his Command offered little sympathy. Mr. Espinosa's then-acting commanding officer and Executive Officer, Commander ("CDR") Zimmerman, claimed that Mr. Espinosa was feigning or magnifying his symptoms to prolong administration or prompt an MEB. Similarly, Chief Master-at-Arms Evanchek told Mr. Espinosa there was nothing wrong with him and he was undeserving of MEB processing.

47.     Despite Mr. Espinosa's documented mental health struggles and no previous incidents of misconduct, his commander in May 2015 found that Mr. Espinosa violated Uniform Code of Military Justice ("UCMJ") Article 86, absence without leave, and Article 92, failure to obey an order, for his conduct related to his August 2014 El Paso trip and suicide attempt. Additionally, his commander found that Mr. Espinosa violated UCMJ Article 107, false official statements, because he concluded that Mr. Espinosa exaggerated his self-harm. Mr. Espinosa was issued a non-judicial punishment ("NJP"), and he was reduced in grade from E-5 to E-4.

48.     Mr. Espinosa appealed the NJP, asserting that the punishment was disproportionate to the offenses. He argued that there was insufficient consideration given to his mental health conditions and that he experienced a mental health episode on the occasion he was accused of violating the UCMJ. Mr. Espinosa further asserted that he had medical and physical proof of his self-harm.

49.     In June 2015, Mr. Espinosa learned that his then Commanding Officer, Captain Hough, was seeking to administratively separate him for a violation of UCMJ Article 92. Mr. Espinosa appealed to the General Court Martial Convening Authority. In his appeal, Mr. Espinosa explained that he was in the process of completing an MEB and asked to complete the DES process.

50.    While this was proceeding, the MEB prepared a July 22, 2015 Draft Narrative Summary ("NARSUM") for Mr. Espinosa. The Draft NARSUM indicated diagnoses of anxiety disorder, MDD, and borderline personality disorder, and stated that Mr. Espinosa was "being referred to the Physical Evaluation Board (PEB) ... as *persistence of symptoms limit service member's ability to perform the functions of his MOS [military occupational specialty] and physical training*" (emphasis added).

51.    On August 18, 2015, the Commander of U.S. Fleet Cyber Command, Vice Admiral ("VADM") Tighe, approved Captain Hough's recommendation that Mr. Espinosa be separated, noting that it was Navy policy for administrative separations based on misconduct to take precedence over medical consideration. However, the letter from VADM Tighe also stated that if Mr. Espinosa's case was referred to a PEB before completing the administrative separation, the case must be forwarded to Navy Personnel Command for final disposition, as the initiation of a PEB referral would strip VADM Tighe of her separation powers over Mr. Espinosa.

52.    On September 1, 2015, Mr. Espinosa attended his initial PTSD VA Compensation and Pension examination. The VA examiner indicated that they had reviewed Mr. Espinosa's service treatment records, service personnel records, and enlistment examination. In addition, the examiner noted that Mr. Espinosa had the following diagnoses: PTSD related to childhood sexual trauma, Persistent Depressive Disorder, Unspecified Anxiety Disorder, and Borderline Personality Disorder "by history." The VA examiner further indicated that the symptoms of these diagnoses "intermingle and overlap" such that it "is not possible to determine degree of each symptom attributable to each diagnosis without resorting to mere speculation."  Based on these symptoms, the VA examiner determined that Mr. Espinosa had "occupational and social

impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood," which equates to at least a 70% disability rating.

53.     On September 3, 2015, Mr. Espinosa's Executive Officer CDR Gibson sent an email to Lieutenant Commander ("LCDR") Julia Massey to confirm whether Mr. Espinosa was in the PEB process. CDR Gibson made it clear speed was the priority with Mr. Espinosa's separation, as it was "Commander's Intent to immediately separate…". CDR Gibson's email noted that Mr. Espinosa would be awarded an honorable characterization of service in "an abundance of caution against any possible post-separation grievance (i.e. Congressional) that would strengthen any adverse public perception of a service bias against active duty recipients of mental health treatment." On September 8, 2015, LCDR Massey replied that Mr. Espinosa's case had a PEB tracking number, but had not yet arrived at the PEB.

54.     On September 8, 2015, CDR Gibson responded: "As the ROOT CAUSE OF NEARLY HALF OF THE UNIT [SITUATION REPORTS] SENT BY MY [COMBINED TASK FORCE] COMMANDER THIS YEAR, this individual is assessed to constitute an ongoing threat to Good Order and Discipline and, for the good of the Navy, needs to be [administratively separated] as soon as practicable" (capitalization in original). On September 9, 2015, LCDR Massey sent an order with High Importance to LCDR Oseland, PEB Liaison Officer in Charge, to cancel Mr. Espinosa's case "immediately." Mr. Espinosa's case was terminated that afternoon – without an PEB.

55.     On September 9, 2015, Mr. Espinosa learned that he was being administratively separated and that his MEB had been terminated. He said that he was "stunned" by this decision. The suddenness of his separation made him feel that no one in his leadership "care[d] about [his]

wellbeing," and that no one understood that he "need[ed] medical benefits for [his] health issues."

56.     On September 10, 2015, Mr. Espinosa's Navy Disability Attorney, Glen Chidester attempted to halt Mr. Espinosa's administrative separation, asserting that there were multiple issues with proceeding with an administrative separation, including a violation of Naval Military Personnel Manual ("MILPERSMAN") 1910-702, which provides that if a service member has PTSD, then a determination must be made as to whether the PTSD may have been a contributing factor to the conduct forming one or more of the bases for the administrative separation action. Attorney Chidester also objected to Command's position that PEB must approve the case in order for it to be pending, stating that this was an incorrect reading of the requirements, and Command in fact lacked separation authority because the decision to refer the matter to the PEB had already been made by the MEB.

57.     Department of the Navy DES Counsel Program Manager Carsten wrote in a September 10, 2015 email, expressing concerns about the basis for Mr. Espinosa's separation: "if all we have is the [unauthorized absence] and leaving liberty area (whatever that means) because he went to kill himself, I think the [government] is looking for a black eye." Mr. Carsten additionally stated in a September 11, 2015 email that the Navy's position that there was no pending PEB was weak, given that Mr. Espinosa's case had already been referred to DES and he had completed examinations as part of the requirements for a NARSUM.

58.     Mr. Carsten also warned that discharging Mr. Espinosa without finishing the medical separation process would create a gap in medical care, citing incidents where inadequate medical care led to veterans killing themselves or others.

59.     Attorney Chidester asked Mr. Espinosa's chain of command to stop the separation and worked diligently to ensure the PEB received the required documents to allow his referral to move forward. As a result of these efforts, the PEB reenrolled Mr. Espinosa in DES on the morning of September 11, 2015. However, Mr. Espinosa was administratively separated that same day, which the Navy deemed to nullify the PEB.

**D.     Mr. Espinosa Fails To Receive Needed Mental Health Treatment Post Discharge**

60.     Mr. Espinosa had a rocky re-entry into civilian life. A September 18, 2015 letter from the VA informed Mr. Espinosa that he had been disenrolled from the DES process, and as a result the VA would not render a benefits decision for Mr. Espinosa's application submitted during the DES process. A VA social worker advised Mr. Espinosa to cash out his retirement savings account for financial support and to apply for food stamps.

61.     During the next two years, Mr. Espinosa continued to struggle with his mental health, which affected his ability to maintain consistent employment and find financial stability. Progress notes from a social worker on June 1, 2017, stated that Mr. Espinosa had not returned calls because he had turned off his phone and had used his last remaining funds to turn it back on. At the time, he did not have adequate food and was unaware of food pantries that did not require transportation.

62.     Mr. Espinosa finally received service-connected VA disability benefits in 2017. It was also at this time that Mr. Espinosa began to disclose the sexual assault he experienced in 2011. As part of the application process, an examining physician completed a PTSD Disability Benefits Questionnaire, noting that the stressors causing Mr. Espinosa's PTSD occurred while in service and that a PTSD diagnosis was consistent with the findings underlying his prior diagnoses and examinations. The questionnaire identified Mr. Espinosa's level of occupational

and social impairment with regard to his mental diagnoses as "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." Mr. Espinosa received a ***100% disability rating*** for PTSD with MDD, which was "***established as directly related to military service***." (emphasis added).

      **E.**      **The BCNR Removes Misconduct from Mr. Espinosa's Discharge Certificate, But Refuses to Award a Medical Retirement**

63.      In August 2023, Mr. Espinosa appealed to the BCNR, seeking to correct his records to reflect a medical retirement.  In the alternative, he requested that the BCNR at least change the narrative reason of his discharge from "Administrative Separation" to "Secretarial Authority." BCNR chose the latter, disregarding key evidence.

64.      In reaching its decision, the BCNR identified several factors, particularly an Advisory Opinion from a licensed psychologist that served as the key basis for its conclusion. The Advisory Opinion inexplicably stated that Mr. Espinosa did not suffer from a compensable mental health condition at the time of his discharge. Although he was diagnosed with Panic Disorder, MDD, Borderline Personality Disorder, and PTSD while on active duty, the Advisory Opinion contended that his PTSD was unrelated to military service, instead linking it to childhood trauma, claiming that "***the stressor causing PTSD occurred while enlisted***, however, veteran noted it was while he was on leave and denied it being related to MST" (emphasis added). It also stated, "it is believed the veteran's mental health diagnoses, including PTSD and Borderline Personality Disorder, were present prior to his military involvement," concluding that these conditions were not incurred in or aggravated by military service in a way that would make them compensable.

65.      The Advisory Opinion argued that Mr. Espinosa was not unfit for continued military service, notwithstanding the fact that those who actually treated Mr. Espinosa – such as

Dr. Higgins of Laurel Ridge Treatment Center – maintained that Mr. Espinosa's security clearance should be suspended. Although Mr. Espinosa experienced significant psychiatric symptoms, attempted suicide, and received inpatient psychiatric treatments, the opinion found "insufficient evidence that his misconduct could be attributed to any of his diagnosed conditions." The Advisory Opinion concluded that Mr. Espinosa's PTSD or MDD did not meet the criteria for unfitness for duty, stating there was no clear evidence linking his misconduct, which was deemed indicative of unfitness, to his diagnosed conditions, despite acknowledging "sufficient evidence of a mental health condition that may be attributed to military service."

66.     On March 12, 2024, Mr. Espinosa's counsel submitted a rebuttal to the Advisory Opinion, but on June 17, 2024, the BCNR denied Mr. Espinosa's request for medical retirement. It instead granted only a change to the narrative reason for separation on his DD Form 214 from "Administrative Separation" to "Secretarial Authority." The BCNR acknowledged that "clemency was warranted" due to Mr. Espinosa's emotional and mental health difficulties and agreed that changing his separation reason would "alleviate any stigma a discharge based on misconduct may impart." However, the Board made it clear that this change should not be seen as a reason for granting further relief in the form of a disability retirement, emphasizing that "this adjustment... should not later be viewed as a reason for granting additional relief in the form of a disability retirement."

67.     The Board ultimately determined that "the preponderance of the evidence does not support a finding that he met any of the criteria for unfitness at the time of his discharge," noting that Mr. Espinosa did not meet the criteria for unfitness, which requires a service member to be "unable to perform the duties of their office, grade, rank or rating as a result of a qualifying disability condition." The Board referred to the Advisory Opinion, which stated that Mr.

Espinosa's misconduct was "much more likely" the result of a personality disorder, a condition "not generally considered unfitting within the Disability Evaluation System." The Board disregarded the VA's ratings for Mr. Espinosa, stating that they were not evidence of unfitness because disability ratings by the VA are "tied to the establishment of service connection, not unfitness for military duty."

### III.    The BCNR's Decision Was Arbitrary, Capricious, Contrary to Law, and Unsupported by Substantial Evidence

68.    The BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law because it failed to apply the standards established by statute and regulation for evaluating Mr. Espinosa's claims. Had the correct legal framework been followed, the evidence would have compelled a finding that Mr. Espinosa's MDD and PTSD were unfitting at the time of discharge and warranted at least a 70 percent disability rating.

69.    Under 10 U.S.C. § 1201 and DoDI 1332.18 (2014), the BCNR was required to assess whether Mr. Espinosa's PTSD and MDD impaired his ability to perform common military tasks, deploy, pass a physical fitness test, or meet the specialized qualifications required of a Cryptologic Technician. DoDI 1332.18 (2014) further mandates that any fitness determination must also consider the risk the member poses to themselves or others and the potential burden on the military.

70.    The BCNR violated these mandates by failing to articulate the specific duties Mr. Espinosa was required to perform as a Cryptologic Technician and by failing to assess whether his psychiatric conditions rendered him unable to perform those duties, complete standard military tasks, or deploy. Dr. Higgins, for instance, recommended that Mr. Espinosa's security clearance be suspended because of his psychiatric conditions – the Board did not address how a Sailor could be a Cryptologic Technician without security clearance. Had the BCNR engaged in

the required analysis, it would have found that Mr. Espinosa was unfit due to: (1) his inability to maintain a security clearance; (2) his inability to complete standard military tasks; and (3) his disqualification from any form of mobilization.

71.    The BCNR further failed to apply the required "risk and burden" analysis. It did not meaningfully consider how Mr. Espinosa's extended participation in inpatient and partial hospitalization programs between August 2014 and June 2015 demonstrated that he could not safely or reliably perform military duties. Nor did it acknowledge that Mr. Espinosa's command viewed him as a direct operational liability. Specifically, his commander reported that Mr. Espinosa was "the ROOT CAUSE OF NEARLY HALF OF THE UNIT [SITUATION REPORTS] SENT BY MY [COMBINED TASK FORCE] COMMANDER," and that he "constitute[d] an ongoing threat to Good Order and Discipline" (capitalization in original).

72.    Instead, the BCNR improperly based its fitness determination solely on the presence of a borderline personality disorder diagnosis, allegedly explaining Mr. Espinosa's misconduct. This approach ignored the mandatory duty-based standard for fitness under DoDI 1332.18 (2014) and substituted an impermissible diagnosis-driven rationale. It also disregarded that Mr. Espinosa's duty limitations—including his inability to carry a weapon, maintain a security clearance, or participate in mobilization—had consistently been attributed to his compensable MDD and PTSD.

73.    The BCNR compounded its error by relying exclusively on the borderline personality disorder diagnosis and disregarding the overwhelming evidence that Mr. Espinosa's disabling limitations were due to his compensable conditions. The MEB referred Mr. Espinosa to the PEB specifically because "persistence of major depressive disorder and PTSD symptoms limit[ed] the service member's ability to perform the functions of his MOS and physical

21

training." The BCNR failed to engage with this evidence, despite its direct relevance to whether Mr. Espinosa was fit for duty for a compensable condition.

74.     Moreover, the BCNR failed to properly consider Mr. Espinosa's post-discharge VA examinations and ratings in the record. Instead, the BCNR's analysis consisted only of the reasons why VA service-connection is different from unfitness and did not give the VA evidence the bare minimum consideration required by law. *See U-Ahk-Vroman-Sanchez v. United States Dep't of Def.*, 2021 U.S. Dist. LEXIS 21139, at \*21 (D.D.C. 2021) (Board's cursory treatment of VA's ratings rendered its decision not in accordance with law); *Alver Valles-Prieto v. United States*, 159 Fed. Cl. 611, 618 (2022) (Board's decision unsupported by substantial evidence where it failed to consider VA ratings); *Keltner v. United States*, 165 Fed. Cl. 484, 506 (2023) (Board's failure to adequately consider VA rating rendered decision arbitrary and capricious).

75.     By ignoring this evidence, the BCNR failed to fulfill its responsibility to conduct an independent assessment of Mr. Espinosa's *complete* record. The scant reference to any of Mr. Espinosa's medical records illustrates the BCNR's incomplete review.

76.     Had the proper standards been applied, Mr. Espinosa's MDD and PTSD would have been found unfitting at the time of his separation from the military. Upon such finding, 10 U.S.C. § 1216(a) and DoDI 1332.18 (2014) would have required the BCNR to adopt at least a 30 percent disability rating for Mr. Espinosa's unfitting MDD and PTSD given his in-service VA Compensation and Pension Exam, and his post-discharge rating of 100 percent disability.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 701 ET. SEQ.)

77.     Plaintiff hereby incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth herein.

78.    The BCNR's failure to correct Mr. Espinosa's erroneous discharge is subject to judicial review as a final "agency action" under the APA. 5 U.S.C. §§ 551(13), 701, 704.

79.    Mr. Espinosa's 2023 appeal to the BCNR was his final administrative option to have his discharge corrected to reflect a medical retirement for PTSD and MDD rather than an administrative separation. Plaintiff has no further administrative remedies for challenging his erroneous separation. He has made every attempt in good faith to resolve this conflict with the Navy and has exhausted all possible administrative remedies.

80.    Mr. Espinosa's APA claim accrued on the date of the BCNR's final agency action and is ripe for review by this Court.

81.    The BCNR's decision violated the APA because it was arbitrary, capricious, unsupported by substantial evidence, and contrary to law. The BCNR failed to apply the legally required fitness criteria, did not define Mr. Espinosa's duties, and relied improperly on an unsupported personality disorder diagnosis to deny relief. It ignored compelling and contemporaneous evidence from Mr. Espinosa's MEB, PEB referral, VA examinations, and treating providers. It failed to apply the "risk and burden" standard, failed to consider whether Mr. Espinosa could perform his duties or deploy, and offered no meaningful engagement with medical or command evidence supporting unfitness. As a result of the BCNR's decisions, Mr. Espinosa was, and continues to be, deprived of the benefits of the medical retirement to which he is entitled. He should be awarded that retirement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant and award the following relief:

a.    Find that the BCNR's decision was arbitrary, capricious, against the substantial evidence, and contrary to law;

     b.      Remand the matter to the BCNR for a new determination as to whether Mr.

Espinosa's PTSD was unfitting and warranted medical retirement;

     c.      Award Plaintiff interest, costs, and attorneys' fees; and

     d.      Grant such other relief as the Court deems just and proper.

Dated: September 4, 2025

Rochelle Bobroff (DC Bar No. 420892)
Esther Leibfarth (DC Bar No. 1016515)
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1100 Wilson Blvd, Suite 900
Arlington, VA 22209
(202) 265-8305
rochelle@nvlsp.org
Esther@nvlsp.org

By: */s/ Matei Alexianu*

Matei Alexianu (DC Bar No. 90017412)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, D.C. 20006
(202) 223-1200
malexianu@foleyhoag.com

Jeffrey I.D. Lewis (*pro hac vice*
forthcoming)
Cecilia G. Copperman (*pro hac vice*
forthcoming)
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th Floor
New York, NY 10019
(212) 812-0400
jidlewis@foleyhoag.com
ccopperman@foleyhoag.com

Katherine F. Luo (*pro hac vice* forthcoming)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-3121
kluo@foleyhoag.com

*Attorneys for Plaintiff*
*Matthew Espinosa*

List of Attached Appendix
**Appendix A    Table of Abbreviations**